IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br>    v.<br><br>PABLO SANTIAGO HERNANDEZ-ARENADO, Register Number 04139-131<br><br>    Respondent. | No. 08-cv-278-JPG<br><br><br><br><br>consolidated with |
| PABLO SANTIAGO HERNANDEZ-ARENADO,<br><br>    Petitioner,<br><br>    v.<br><br>IVONNE BAZERMAN, Acting Chairperson of the Federal Bureau of Prisons Certification Review Panel, Washington, D.C., and LISA J.W. HOLLINGSWORTH, Warden of U.S.P.-Marion, Marion, Illinois,<br><br>    Respondent. | No. 08-cv-291-JPG |

**MEMORANDUM AND ORDER**

The resolution of this case turns on whether respondent Pablo Santiago Hernandez-Arenado ("Hernandez") is "in the custody of the Bureau of Prisons" for the purposes of the civil commitment procedures established by § 302(4) of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, § 302(4), 120 Stat. 587, 620 (2006) (codified at 18 U.S.C. § 4248). The Court concludes that he is not.

**I.    Background**

Hernandez is a Cuban citizen who arrived in the United States in 1980 by way of the Mariel Boatlift, after which the Attorney General granted him immigration parole under 8 U.S.C.

§ 1182(d)(5). In 1984, Hernandez pled guilty to a charge of sexual assault on a child less than 13 years of age in violation of New Jersey state law and was sentenced to serve five years in a New Jersey prison. The Immigration and Naturalization Service ("INS") subsequently revoked his immigration parole, and when he finished serving his New Jersey criminal sentence in 1987, the INS detained him based on his immigration parole revocation and placed him in a facility run by the federal Bureau of Prisons ("BOP") pending deportation. *See* 8 U.S.C. §1231(a)(6).

However, Mariel Cubans like Hernandez pose a problem to standard deportation protocol because neither Cuba nor any other nation has agreed to accept them. This leaves them in a sort of no-man's land where they are inadmissible to the United States but cannot be deported to another country. As a result, a number of Mariel Cubans continue to be detained in federal prisons with no realistic end to their detention in sight. While housed in BOP facilities, Mariel Cuban detainees are subject to the day-to-day control of BOP officials, although INS (now its successor the Bureau of Immigration and Customs Enforcement ("BICE")[1]) reviews the BOP management of the detainees at least annually.

In 2005, the Supreme Court decided that Mariel Cubans could not be held indefinitely pending deportations that were not likely to happen in the reasonably foreseeable future. In *Clark v. Martinez*, 543 U.S. 371 (2005), the Supreme Court considered the cases of Sergio Suarez Martinez and Daniel Benitez. Martinez and Benitez, like Hernandez, came to the United States from Cuba in 1980 as part of the Mariel Boatlift and committed crimes for which they

---

[1]The INS was abolished after its immigration enforcement functions were transferred to the Department of Homeland Security ("DHS"), and its divisions, one of which is the BICE, after implementation of the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135. *See* 6 U.S.C. §§ 251(2) & 291; 8 C.F.R. § 2.1; *see also Clark v. Martinez*, 543 U.S. 371, 374 n. 1 (2005) (acknowledging transfer of INS functions to the DHS).

2

were incarcerated. Both were detained after the expiration of their respective prison terms by the INS pursuant to removal proceedings. The Supreme Court held that when an alien is held in custody pursuant to 8 U.S.C. §1231(a)(6), which provides for the detention of aliens if they are inadmissible to the United States and subject to removal, the alien may only be held for a reasonable time period in order to effect removal. *Martinez*, 543 U.S. at 378. This reasonable period of time is presumed to be 6 months or less. *Id.* In so holding, the Supreme Court extended the reach of *Zadvydas v. Davis*, 533 U.S. 678 (2001), to those aliens who are not presently able to be removed. *Id.* at 386.

Shortly after the Supreme Court decided *Martinez*, Hernandez, who was at the time housed at a BOP facility in Leavenworth, Kansas, still solely pursuant to the immigration parole revocation, filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241 seeking his release from detention because his deportation was not likely in the reasonably foreseeable future. *See Hernandez v. Carlson*, Case No. 5:05cv03051 RDR. In June 2007, Hernandez was moved to the United States Penitentiary in Marion, Illinois ("USP-Marion"), a BOP facility within this district. Nevertheless, on March 31, 2008, the Honorable Richard D. Rogers of the District of Kansas granted Hernandez's *habeas* petition and ordered that he be released within 14 days, that is, on or before April 14, 2008, subject to certain conditions of supervision. The respondent in that case appealed the ruling to the United States Court of Appeals for the Tenth Circuit, where the case is still pending.

After Judge Rogers granted the petition but before Hernandez's release date, Ivonne Bazerman, acting chairperson of the BOP's Certification Review Panel, certified that Hernandez is a sexually dangerous person under 18 U.S.C. § 4247(a)(5) subject to civil commitment proceedings under certain provisions of the Adam Walsh Act, 18 U.S.C. § 4248. The

3

government filed a petition to civilly commit Hernandez as a sexually dangerous person and commenced the instant proceedings (Case No. 08-cv-278-JPG, Doc. 1). In a pleading captioned as a petition for a writ of *habeas corpus*, Hernandez responded to the government's petition, arguing that 18 U.S.C. § 4248 does not apply to him because he is not in BOP custody (Case No. 08-cv-278-JPG, Doc. 4), which the Court construes to contain a motion to dismiss the civil commitment proceedings. At the same time, Hernandez commenced a *habeas corpus* proceeding raising the same arguments and seeking immediate release (Case No. 08-cv-291-JPG, Doc. 2). The question squarely before the Court now in both proceedings is whether § 4248 applies to Hernandez.

## II.     Analysis

The Adam Walsh Act subjects to civil commitment certification and confinement proceedings three categories of people:

> a person who is in the custody of the Bureau of Prisons, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person. . . .

18 U.S.C. § 4248(a). Hernandez is clearly not a person "who has been committed to the custody of the Attorney General pursuant to section 4241(d)," which applies to a defendant in a federal criminal proceeding prior to his sentencing or during his term of probation or supervised release, *see* 18 U.S.C. § 4241(a), who has been found to be "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). Nor is he a person "against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person." Consequently, to the extent §

4

4248's civil commitment proceedings apply to Hernandez, they must do so because he is "a person who is in the custody of the Bureau of Prisons."

What does it mean to be "in the custody of the Bureau of Prisons"? When the Court is called on to interpret statutory language like that in § 4248(a), "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991)); *accord United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 738 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1246 (2008). If the "language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," and "the statutory scheme is coherent and consistent," the inquiry is over. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). To determine whether a statute is plain or ambiguous, the Court must consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

The Court's inquiry into the plain meaning of § 4248(a) is complicated by the elusive nature of the term "custody." Black's Law Dictionary notes in its definition of custody, "The term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." Black's Law Dictionary 460 (rev. 4th ed. 1968). Indeed, the government argues that Hernandez is "in the custody of the Bureau of Prisons" because he is in the physical custody of the BOP and the BOP controls his day-to-day life. On the other side, Hernandez argues that he is not "in the custody of the Bureau of Prisons" because he is in the legal custody of the BICE of the Department of Homeland Security ("DHS"), he is being detained under the DHS's authority and he is simply housed at a

5

BOP facility subject to the oversight of the DHS.

Courts have construed "custody" differently in different contexts. For example, with respect to *habeas corpus* proceedings under 28 U.S.C. § 2241, which must "name the person who has custody over" the petitioner, 28 U.S.C. § 2242, courts have held that the person with immediate physical custody over the petitioner with the power to produce the petitioner in court is the "person who has custody over" the petitioner for § 2241 purposes, not the person under whose authority the petitioner is detained. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Kholyavskiy v. Achim*, 443 F.3d 946, 953 (7th Cir. 2006).[2]

However, custody does not necessarily depend on there being immediate physical custody. For example, again in the § 2241 context, where relief is only available to those "in custody," a petitioner can be "in custody" of the parole board where he is subject to parole restrictions that significantly confine and restrain his freedom but where he is not in present physical custody. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *see also Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (§ 2255 petitioner on supervised release "in custody" for purposes of that statute). Thus, the plain language of § 4248(a) is of little help.

The Court now turns to the context in which the language is used and the context of the statute as a whole. Two of the three categories of people subject to civil commitment proceedings clearly apply only to individuals who have contact with the federal criminal justice

---

[2]The Court questions the relevance of § 2241's precedent to the civil commitment certification proceedings. It is clear that the § 2241 respondent must be the person with physical custody over the petitioner because the respondent must be able to bring the petitioner to court. *See Padilla*, 542 U.S. at 435; *Kholyavskiy*, 443 F.3d at 953. Indeed, in his *habeas* proceeding, Case No. 08-cv-291-JPG, Hernandez has sued "the person who has custody over" him for § 2241 purposes, USP-Marion Warden Lisa J.W. Hollingsworth. Nothing in § 4248 suggests that the understanding of "custody" as used in 18 U.S.C. § 4248 has anything to do with the physical ability to bring the petitioner to court.

6

system and who are under the authority of the Attorney General, the head of the Department of Justice ("DOJ").  The second category covers those who are under DOJ authority and who are charged but cannot be tried because of their mental state;  the third covers those who are under DOJ authority and who were charged but were not tried because of their mental state.  The first category, if it applied to those charged, convicted and committed to the authority of the BOP to serve a criminal sentence would round out the picture so that essentially anyone under DOJ authority charged in the federal criminal justice system (if he is not acquitted or if charges are not dismissed for reasons other than mental state) would be subject to § 4248's civil commitment proceedings.

That § 4248 was intended only to apply the "custody" requirement to those under the authority of the DOJ, and not those under the authority of the DHS, a separate Executive Branch agency, is borne out by the statute's list of those authorized to certify someone as a sexually dangerous person.[3]  Only the Attorney General, his designee or the Director of the BOP – all within the DOJ – is authorized to make such a certification.[4]  That the Secretary of the DHS is not authorized to certify someone as a sexually dangerous person indicates that § 4248 was not

---

[3]Although the statute authorizing detention of aliens who have been ordered removed, 8 U.S.C. § 1231, names the Attorney General as the source of the authority for detention, that authority now resides in the Secretary of DHS and the divisions of the DHS pursuant to the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135.  *See* 6 U.S.C. §§ 251(2) & 291; 8 C.F.R. § 2.1; *see also Clark v. Martinez*, 543 U.S. 371, 374 n. 1 (2005) (acknowledging transfer of INS functions to the DHS).

[4]The structure of the sentence as drafted makes it unclear whether the statute authorizes the Attorney General, *his designee* or the BOP Director, or whether it authorizes the Attorney General, the BOP Director, or *either of their designees* to make the required certification.

intended to reach those "in custody" solely under DHS authority.[5]

Viewing the reach of § 4248's civil commitment proceedings to extend to those simply in BOP's immediate physical custody would impermissibly convert the Adam Walsh Act beyond its intended reach. While it is true that the Adam Walsh Act was intended to be a comprehensive statute "[t]o protect children from sexual exploitation and violent crime," Pub. L. No. 109-248, 120 Stat. 587 (2006), accepting the government's view that anyone under BOP's immediate physical custody would be subject to the Act's civil commitment proceedings would go too far. Under such a reading, those housed in BOP facilities as material witnesses, under civil contempt orders, on writs of *habeas corpus ad testificandum*, or under contracts with other sovereigns (such as state or local governments) to house sensitive prisoners would be subject to civil commitment procedures. The Court does not believe Congress intended the Adam Walsh Act to reach this far.

The Adam Walsh Act's legislative history supports the conclusion that Congress did not intend the Act to apply to DHS detainees not held under the authority of the DOJ. The Report of the Committee on the Judiciary about the Children's Safety Act of 2005 bill, eventually renamed the Adam Walsh Act, is consistent with this view. The "Purpose and Summary" section of the report describes the nearly identical civil commitment proceedings contained in §511(4) of that bill as "procedures for civil commitment of *Federal sex offenders* who are dangerous to others because of serious mental illness, abnormality or disorder." H.R. Rep. No. 218(I), 109th Cong., 1st Sess. 22, (2005) (available at 2005 WL 2210642) (emphasis added). The report's description

---

[5]The DHS had assumed control over immigration matters from the DOJ when the Adam Walsh Act was passed. If Congress had intended to give authority to the DHS to certify its detainees as sexually dangerous persons, it certainly could have done so.

8

of the civil commitment procedures likewise evinces only an intent to expand existing civil commitment procedures for federal sex offenders:

> H. R. 3132 authorizes civil commitment of certain Federal sex offenders who are dangerous to others because of serious mental illness, abnormality or disorder. Such procedures would apply, for example, in circumstances in which a pedophile who was sentenced to imprisonment for child molestation offenses and States [*sic*] his intention to resume such conduct upon his release from jail. Under the civil commitment provisions in existing law, the sex offender must be hospitalized while incarcerated and the director of the facility must certify that the offender is suffering from a "mental disease or defect" creating a substantial risk of harm to others. Such a standard is narrow and does not include sex offenders with mental disorders who are clearly dangerous but who do not fall within the narrowly applied definition of metal [*sic*] illness. The first condition – prior hospitalization – is an unjustified impediment to seeking civil commitment. The civil commitment provision contained in this legislation combines commitment standards substantively similar to those approved by the Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane*, 122 S. Ct 867 (2002).

H.R. Rep. No. 218(I) at 29. Clearly, Congress viewed the civil commitment provisions of the Adam Walsh Act as an improvement of existing civil commitment procedures applicable to those who have violated federal sex offense laws. The law was not intended to apply to Mariel Cubans like Hernandez who have not committed or been charged with a federal sex offense.[6]

For the foregoing reasons, the Court finds that § 302(4) of the Adam Walsh Act, codified at 18 U.S.C. § 4248, does not apply to those in immediate physical custody of the BOP but in legal custody – that is, detained under the authority of – the DHS. The Court therefore **DECLINES** to commit Hernandez to the custody of the Attorney General pursuant to 18 U.S.C. § 4248, **GRANTS** Hernandez's motion to dismiss (Case. No. 08-cv-278-JPG, Doc. 4) and

---

[6]Although the parties discuss proposed DOJ rule, 72 Fed. Reg. 43205-01, 2007 WL 2212204 (Aug. 3, 2007), and a DOJ memorandum regarding implementation of the civil commitment procedures, those agency materials do not shed any light on Congress's intent when it enacted the Adam Walsh Act and are therefore not helpful to deciding the question at issue.

**DISMISSES** the proceedings to declare Hernandez a sexually dangerous person (Case No. 08-cv-278-JPG).

While the Court is gravely concerned with the danger to the public's safety posed by releasing a person like Hernandez into society, there is simply no authority, whether under 8 U.S.C. § 1231(a)(6) or 18 U.S.C. § 4248, to detain him further. There being no authority to stay Judge Rogers' order to release Hernandez, no unexhausted available remedies in light of the inapplicability of § 4248, and no authority to further detain Hernandez, the Court **GRANTS** Hernandez's petition for a writ of *habeas corpus* under 28 U.S.C. § 2241 (Case No. 08-cv-291-JPG; Doc. 2). To the extent required to support this holding, the Court adopts Judge Rogers' reasoning as its own. The government shall release Hernandez within 14 days of the date of this order under the conditions found in 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. All other motions pending in these cases are rendered **MOOT** by this ruling. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: June 9, 2008**

s/ J. Phil Gilbert
**J. Phil Gilbert**
**U.S. District Judge**